UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARK K. ENDRIS, | ) | CAUSE NO. 3:12-CV-674-CAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant, | ) | |

**ORDER AND OPINION**

On October 29, 2012, Plaintiff Mark K. Endris ("Endris") filed his complaint in this
Court. On April 8, 2013, Endris filed his opening brief requesting that this Court reverse and
remand this matter for further administrative proceedings. On May 14, 2013, Defendant, Acting
Commissioner of the Social Security Administration, Carolyn W. Colvin ("Commissioner"),
filed her response brief. Endris filed a reply on June 3, 2013. This Court may enter a ruling in
this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.     PROCEDURE**

On February 23, 2010, Endris filed applications for Title II Disability Insurance Benefits
("DIB") and Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 416(i),
423 alleging disability beginning on December 31, 2007. (Tr. 151-54, 160-66). In his
application, Endris alleged impairments due to symptoms from physical and mental problems,
including spinal conditions, carpal tunnel syndrome, depression, and anxiety. (Tr. 21, 43, 153,
160, 175). His claims were initially denied on May 25, 2010, and also denied upon

---

[1]      On February 14, 2013, Carolyn Colvin became the Acting Commissioner of the Social Security
Administration. In accordance with Rule 25(d) of the *Federal Rules of Civil Procedure*, Carolyn W. Colvin, in her
official capacity only, is substituted as the defendant in this matter.

reconsideration on August 18, 2010.  (Tr. 90, 94, 100-105).  On May 10, 2011, Endris appeared

and testified at a hearing before an Administrative Law Judge ("ALJ").  (Tr. 38-85).

On May 27, 2011, the ALJ issued a partially favorable decision.  (Tr. 17).  The ALJ

found that Endris met the insured status requirement of the Social Security Act through

December 31, 2007.[2]  (Tr. 23).  The ALJ further found that Endris had not engaged in substantial

gainful activity since his alleged onset date.  (Tr. 24).  Next, because the ALJ determined that

there was insufficient objective medical evidence in the record, he found that Endris had no

medically determinable impairment prior to December 8, 2008.  (Tr. 24-25).  The ALJ found

that, beginning on December 8, 2008, Endris had the following the severe impairments: carpal

tunnel syndrome in both hands, impairments in the neck and lower back areas of the spine, and

depressive and anxiety disorder.  (Tr. 25).  However, despite those impairments, the ALJ found

that Endris did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

With the assistance of a vocational expert ("VE"), the ALJ found that, as of December 8,

2008, Endris's severe physical and mental impairments limited him to the residual functional

capacity ("RFC") to perform a very limited range of sedentary work that left him unable to

perform any of his past relevant work or a significant number of other jobs.  (Tr. 25-30).  The

ALJ then determined that Endris became disabled on December 8, 2008, and was entitled to SSI,

but that he was not entitled to DIB because the period in which he became disabled did not fall

within his insured status period, which ended December 31, 2007.  (Tr. 30-31).

On May 25, 2012, the Appeals Council denied Endris's request for review of the ALJ's

decision, making it the Commissioner's final decision.  *See Fast v. Barnhart*, 397 F.3d 468, 470

---

[2]         For purposes of DIB, Endris must demonstrate that a disability existed on or before the end of his insured
status.  *See* 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.101.

(7th Cir. 2005); 20 C.F.R. § 404.981. On October 29, 2012, Endris filed a complaint in this Court seeking a review of the ALJ's decision.

**II.    ANALYSIS**

**A.    Facts**

Endris was fifty years old when the ALJ denied his DIB claim. (Tr. 71-72). He completed eleventh grade and has not earned a high school equivalency diploma. (Tr. 46). Previously, Endris performed work as a dry-wall hanger, carpenter, and hand packager.[3] (Tr. 29).

**1.    Hearing Testimony**

At the May 2011 hearing, Endris gave detailed testimony regarding the history and symptoms of his physical and mental impairments. He first asserted that he became unable to work in December 2007, his alleged onset date. (Tr. 43). Endris explained that his latest employer, "Bird Seed Factory," let him go in December 2007 because he was unable to keep up with the pace due to his back and neck problems. (Tr. 49-56). Endris also testified that he had trouble moving both hands. (Tr. 47). In fact, he alleged that the pain was so bad that he underwent a carpal tunnel release in his left hand in January 2011. He testified that his right hand was just as problematic as his left and that it also needed surgery, but that he was waiting for the left to heal first. (Tr. 48-49). Additionally, at the hearing, Endris alleged issues with depression, anxiety, neck and back pain, and migraines and testified that he had used a cane for the past four years to help with the back pain that arose from standing and walking. (Tr. 51, 57-58, 62-63).

**2.    Medical Evidence**

---

[3]    Because of the narrow nature of the issues on appeal, a comprehensive recitation of the otherwise relevant facts is not necessary.

The earliest indication of medical evidence concerning Endris's physical impairments dates back to early 2007 when Dr. Stephen Spicer treated Endris for an ear infection and dental problems. (Tr. 220-21, 241-42). On January 8, 2008, Endris returned to Dr. Spicer who noted that Endris complained of persistent neck and back pain along with pain in his right lower quadrant that he had been experiencing for six months ("the January 8th Spicer note"). Dr. Spicer noted at that time that Endris had a limited range of motion in his neck and some loss of range of motion in the lower back. Dr. Spicer also indicated that a hernia in the lower abdomen caused the lower quadrant pain and prescribed ibuprofen for pain relief. (Tr. 240).

Next, Endris visited Dr. Julian Ungar-Sargon at Neurology and Pain Management. Endris engaged in physical therapy under Dr. Ungar's care. Dr. Unger's physical therapy report dated November 24, 2008, noted Endris's persistent problems with his neck and back along with evidence of weakness and sensory loss with radiation into the extremities. (Tr. 281). Other therapy reports dated December 10, 2008, and December 18, 2008, similarly noted continued neck and back pain with radiating pain and numbness into the upper and lower extremities. (Tr. 277, 279). On December 10, 2008, Dr. Unger ordered diagnostic testing regarding his neck and mid-back pain along with numbness in his hands. The results of the study showed carpal tunnel syndrome in both hands and an increasingly deteriorating nerve disorder in his neck and back.[4] (Tr. 253). A series of treatment notes from doctors C.J. Yoon and David Miller dated between 2010 and 2011 ("the Yoon and Miller notes") also indicate that Endris complained of back and neck pain dating back to 2007. (Tr. 392, 418, 421, 424, 427, 430, 433, 436 439, 442, 545).

Finally, Endris reported symptoms consistent with depression and anxiety dating back to 2010. During an April 2010 psychological consultative examination, Endris complained of

---

[4]     Carpal tunnel syndrome is a progressively painful hand and arm condition caused by a pinched nerve in the wrist. http://www.mayoclinic.com/health/carpal-tunnel-syndrome/DS00326

feelings of hopelessness, helplessness, and worthlessness along with poor concentration and a lack of energy. The clinical psychologist, Dr. Craig Nordstrom, contracted by the Disability Determination Services ("DDS"), reported impressions of moderate depressive symptoms and anxiety. (Tr. 333-36).

### B. Standard of Review

When reviewing an ALJ's decision, the court must determine whether the decision is supported by substantial evidence and is free of legal error. *See* 42 U.S.C. § 405(g) (2006); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is more than mere scintilla of relevant evidence that a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court is not to substitute its own opinion for that of the ALJ's or re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Rice v. Barnhart,* 384 F.3d 363, 368–69 (7th Cir.2004). The ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Rice*, 384 F.3d at 370 (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995)). Finally, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626.

C.      **Issues for Review**

In his opening brief, Endris asks the Court to determine whether substantial evidence supports the ALJ's finding that there was insufficient objective medical evidence to establish the existence of a medically determinable impairment prior to Endris's date last insured. Specifically, Endris argues that the ALJ erred by failing to call a medical expert as required by SSR 83-20 when the disability onset date had to be inferred. Additionally, Endris argues that the ALJ failed to meet his obligation under SSR 83-20 to consider all medical and other evidence in the record, even contradictory evidence, in determining the disability onset date. Specifically, Endris argued that the ALJ ignored the January 8th Spicer note, the historical reality accompanying the December 10, 2008, diagnoses, and the Yoon and Miller notes, which include facts that could support an onset date before December 8, 2008. The Commissioner, however, contends that substantial evidence supports the ALJ's finding because Endris failed to provide sufficient evidence to establish a medically determinable impairment prior to his date last insured. Additionally, the Commissioner refutes Endris's argument that the ALJ should have called for a medical expert.

In cases where a claimant is found disabled as of a certain date, but could qualify for additional benefits if the disability emerged at an earlier date, the ALJ is obligated to exercise the framework outlined in SSR 83-20 to determine the onset date of disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "In the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established." SSR 83-20. To determine the onset date of "disabilities of nontraumatic origin," comparable to Endris's disabilities, SSR 83-20 requires an ALJ to consider three factors, which include: the claimant's allegations regarding the onset date,

the claimant's work history, and all medical and other relevant evidence. *See also Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The ALJ is not required to explicitly refer to SSR 83-20 by name; it will suffice if his opinion demonstrates that he conducted the required analysis. *Id.*

While the Court is not convinced that the ALJ entirely disregarded SSR 83-20, the ALJ's reasoning is nonetheless inadequate to satisfy the analysis the law requires. SSR 83-20 instructs that the date the claimant alleges "should be used if it is consistent with all the evidence available." *Briscoe,* 425 F.3d at 353. The ALJ properly began his analysis of the onset date by starting with Endris's alleged onset date of December 31, 2007, and work history. Not coincidentally, December 31, 2007, happened to be the date that Endris stopped working. In fact, Endris testified at the hearing that he stopped working then because his back and neck pain left him unable to perform his duties sufficiently.

Also at the hearing, however, the ALJ expressed concern because Endris had provided no objective medical evidence to support a December 31, 2007, onset date. As a result, the ALJ agreed to leave the record open for an additional specified number of days, after which he would make his decision. When, at the close of that time period, Endris failed to submit new evidence, the ALJ concluded that December 31, 2007, was not the most reasonable onset date because, aside from Endris's statements of his symptoms, the ALJ found that there was no objective medical evidence that provided findings of an impairment. Because there was no one piece of medical evidence that established the exact date of the onset and the disabilities were of non-traumatic origin, the ALJ had to make an inference based on the medical evidence. The ALJ then determined, with no more explanation than a general reference to the nerve conduction study performed on December 10, 2008 and several medical records dated in 2010 and 2011,

that December 8, 2008, was the onset of Endris's disability.  Endris argues that the ALJ made a fatal error at this juncture because he failed to properly consider all the relevant evidence and he failed to call on a medical expert for assistance. The Court agrees.

Substantial evidence does not support the ALJ's determination of Endris's onset date because the ALJ failed to properly apply the required analysis prescribed by SSR 83-20.  First, under SSR 83-20, the ALJ may not speculate the onset date based on the first date of diagnosis. *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987).  In Endris's case, the ALJ's decision reflects no evidence besides the December 10, 2008, medical report establishing Endris's diagnoses of bilateral carpal tunnel syndrome and significant nerve impairment in his back.  As such, the ALJ's decision appears speculative without substantial evidence to support the December 8, 2008, onset date.

Second, Endris argues that the ALJ erred when he failed to consider all the relevant evidence when rejecting the December 2007 onset date.  While the day when the impairment caused the individual to stop working is important, medical evidence is "the primary element in the onset determination," and the date chosen "can never be inconsistent with the medical evidence of record."  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  A claim, however, is not necessarily ill-fated for lack of medical evidence establishing the exact date an impairment became disabling.  *Id.* at 353. In those cases, the ALJ must "infer the onset date from the medical and other evidence that describes the history and symptomatology of the disease process" and should obtain a medical expert in order to assist in making this inference. *Id.*; *see also* SSR 83-20.

Here, the ALJ failed to include several segments of pertinent medical evidence in determining Endris's onset date.  The ALJ did not acknowledge the treatment note from Dr.

Spicer dated January 8, 2008, which documented serious neck and back pain along with substantial losses in range of motion in the neck and back. Additionally, while the ALJ's determined onset date appears to reflect the December 10, 2008, diagnostic tests revealing carpal tunnel syndrome and spinal nerve impairments, the ALJ failed to consider the timeframe of those impairments, which are of a slowly progressing nature and likely caused symptoms that may have been disabling more than two days before the December 10th diagnoses. Similarly, the ALJ makes no mention of the Yoon and Miller notes from 2010 and 2011 that report that Endris complained of pain beginning in 2007, a timeframe that predates the December 2007 last insured date. Just because these pieces of medical evidence are dated after the last insured date does not make them irrelevant to an inference about the disability onset date. Thus, they should have been addressed in the ALJ's opinion. Of course, the Court cannot reweigh the evidence here and consequently defers to the judgment of the ALJ on remand as to the effect of that evidence on the onset date determination.

Third, Endris argues that the ALJ erred by not seeking the assistance of a medical specialist to help infer Endris's onset date as SSR 83-20 prescribes. SSR 83-20 instructs the ALJ to obtain a medical advisor when the onset must be inferred. The Commissioner argues that the ALJ's error in not calling upon a medical advisor was harmless. Specifically, the Commissioner contends that the outcome in Endris's case would not have been different even if the ALJ had called on a medical advisor because Endris did not supply any evidence from which the expert could have inferred an earlier onset date. The Court disagrees. While the Court cannot make any finding as to what the medical advisor would have said, logic dictates that the medical advisor would have had expertise that could have shed light on the pre-diagnosis symptoms of Endris's impairments and their potentially disabling effects. Therefore, information and insight

from a medical advisor could have influenced the ALJ's onset date determination; although there is no guarantee that the ALJ would have found a different disability onset date. As such, the facts and circumstances in this case, including the absence of an exact disabling date and the non-traumatic nature of the impairments, render this case a prime example of when a medical advisor should be called in for assistance in determining the onset date.

For these reasons, the Court concludes that the ALJ did not properly follow the analysis SSR 83-20 prescribed by failing to consider all the relevant medical evidence and failing to call on a medical expert to interpret the evidence. Thus, substantial evidence does not support the ALJ's determined onset date.

## III.    CONCLUSION

The Court concludes that the ALJ failed to properly determine the onset date of Endris's disability. Therefore, Endris's request for remand is **GRANTED** [Doc. No. 1]. This Court **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

**SO ORDERED.**

Dated this 18th day of September, 2013.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge